UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BASSAM MOUSSA TAHA,

       Plaintiff,                         CIVIL ACTION NO. 11-14538

       v.                                 DISTRICT JUDGE NANCY EDMUNDS

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 9 and 11)**

**I.    PROCEDURAL HISTORY**

      *A.    Proceedings in this Court*

On October 14, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny benefits. (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the case was referred to this Magistrate Judge to review the Commissioner's decision. (Dkt. No. 3). Before the Court are cross-motions for summary judgment. (Dkt. Nos. 9, 11).

      *B.    Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on December 22, 2009, alleging a disability onset date of December 22, 2009. (Tr. 17). The application was initially denied by the Commissioner on April 9, 2010. (Tr. 17). On July 20, 2010, Plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") Ethel Revels, who considered the case *de novo*. On January 25, 2011, the ALJ found that Plaintiff was not disabled. (Tr. 14-26). Plaintiff requested a review of this decision. (Tr. 1). On August 17, 2011, the

ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review. (Tr. 1-6).

In light of the entire record, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, Plaintiff's motion for summary judgment should be **DENIED**, Defendant's motion for summary judgment should be **GRANTED**, and that the findings of the Commissioner should be **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   *ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found at step one that Plaintiff had not engaged in substantial gainful activity. (Tr. 19).

At step two, the ALJ found Plaintiff had the following "severe" impairments: depression, attention deficit hyperactivity disorder, schizoaffective disorder, and polysubstance abuse. (Tr. 19).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. (Tr. 19)

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> medium work . . . except [Plaintiff] requires work that only involves simple, repetitive tasks (unskilled work) due to moderate limitations in the ability to maintain concentration for extended periods of time. [Plaintiff] must avoid production pace work and must avoid work with the general public, functioning as a member of a team, or working in close proximity with co-workers. [Plaintiff] cannot have close supervision.

(Tr. 20).

At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work. (Tr. 24).

At step five, the ALJ found that Plaintiff was not disabled, because there are jobs in the national economy that Plaintiff could perform: hand packer (2,000 jobs), commercial cleaner (10,000 jobs), assembler (6,000 jobs), and kitchen helper (23,000 jobs). (Tr. 25).

### B.     *Administrative Record*

#### 1.     **Plaintiff's Testimony & Statements**

Plaintiff testified at the administrative hearing that he is 28-years-old and completed the tenth grade. (Tr. 35).

Plaintiff was addicted to Vicodin and Xanax. (Tr. 37). He stated that he was depressed, because he could not financially support his wife and son. (Tr. 38-39). Plaintiff testified that he cannot sleep, he has verbal fights, and becomes annoyed when people tell him what to do. (Tr. 54-56). Plaintiff's typical day consists of drinking coffee, smoking a cigarette, and watching television. (Tr. 56). He does not know how to use a computer. (Tr. 58). Being around people makes Plaintiff angry, paranoid, lose concentration, and causes his body to shut down. (Tr. 56-57). Plaintiff does not shave or bathe on a regular basis. (Tr. 57). He is unable to help his parents around the house. (Tr. 58).

Plaintiff testified that he gets aggravated, is unable to concentrate, cannot focus, and lacks motivation. (Tr. 39). Plaintiff worked at Chrysler for two months, but quit because he would become aggravated and have mood swings. (Tr. 39). Plaintiff also worked as a cook for a family business, but he could not remember how to fix the sandwiches. (Tr. 39). Plaintiff attempted to work in his family's construction business, but he refused to listen to direction. (Tr. 40). Finally,

Plaintiff's brother tried to have him operate a concession stand and collect rent for his properties, but Plaintiff could not remember orders or how much rent to collect. (Tr. 41-42).

### 2. Vocational Expert

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is Plaintiff's age, has Plaintiff's level of education, and past work experience who could perform work that is simple and repetitive with moderate limitations in the ability to maintain concentration for extended periods as well as to understand, remember, and carry out detailed instructions. The work could not be more than one- or two-step tasks, and the completion of coworkers' tasks could not be dependent upon the hypothetical individual's completion of his task. Finally, the hypothetical individual could not be in close proximity to coworkers nor under close supervision. (Tr. 63). The VE testified that at the medium level, such an individual could work as a hand packer (10,000 jobs in southeast Michigan), assembler (60,000 jobs in southeast Michigan), cleaner (50,000 jobs in southeast Michigan), and kitchen helper (23,000 jobs in southeast Michigan). (Tr. 64).

When the ALJ added to the hypothetical a condition that the work could not be at a production pace, the VE testified that the packer jobs would be reduced to 2,000, the cleaner jobs would be reduced to 10,000, and the assembler jobs would be reduced to 6,000. (Tr. 64-65).

The VE testified that Plaintiff would be precluded from work if he did not have any "useful ability" to maintain concentration for extended periods. (Tr. 66).

### C. *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act. Specifically, Plaintiff argues the ALJ: (1) incorrectly determined that Plaintiff's impairment or combination of impairments does not meet

or medically equal either listing 12.04 (Affective Disorders) or 12.06 (Anxiety Related Disorders); and (2) did not properly analyze his treating physician's opinion.

**III.   DISCUSSION**

   *A.   Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider

the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.     Governing Law

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

>can be expected to result in death or which has lasted or can be
>expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

>Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
>Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [s]he is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden

transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

      *C.*    *Analysis and Conclusions*

          **1.**    **The ALJ Did Not Err by Finding Plaintiff's Impairment or Combination of Impairments Did Not Meet or Medically Equal Listing 12.04 or 12.06**

Plaintiff argues that the ALJ made an incorrect step three determination that Plaintiff's impairments did not meet or medically equal either listing 12.04 (Affective Disorders) or 12.06 (Anxiety Related Disorders).

Both listing 12.04 and 12.06 require Plaintiff to have at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration[.]

20 CFR Part 404 Subpart P, Appendix 1. Plaintiff does not suggest that he experienced repeated episodes of decompensation; therefore, Plaintiff could only satisfy listing 12.04 or 12.06 by proving he had marked limitations in two of the three broad functional areas – activities of daily living; social functioning; and maintaining concentration, persistence, or pace.

The ALJ stated, "[i]n activities of daily living, [Plaintiff] has moderate restrictions. In social functioning, [Plaintiff] has moderate difficulties. With regard to concentration, persistence

or pace, [Plaintiff] has moderate difficulties." (Tr. 20). Plaintiff argues that the ALJ's opinion is simply a conclusory statement that is not supported by the record. According to Plaintiff:

> the record clearly indicates a marked difficulty in both social functioning and maintaining concentration, persistence or pace supported both by the testimony of [Plaintiff] and the medical records provided by the treating physician. Dr. Nahas[sic] found that [t]he patient is unable to sleep fully and exercises poor judgment due to his affective disorders. Moreover, Oakwood Hospital found [Plaintiff] in need of institutionalization due to his lack of concentration. The record also shows that [Plaintiff] has more than moderate difficulties in social functioning. [Plaintiff] rarely speaks above a whisper and when he does it is only to show either anger or remorse.
>
> Additionally, the overwhelming evidence in the record points to [Plaintiff's] marked restrictions in daily life. The uncontroverted testimony at the hearing was that [Plaintiff] spends approximately seven hours watching television. Dr. Nahas[sic] also concluded that [Plaintiff] had marked difficulties in daily life to find or hold employment.

(Dkt. No. 9 at 5-6).

The ALJ discussed Plaintiff's medical evidence regarding whether his impairments met or medically equaled a listing, in the RFC assessment portion of her analysis rather than including it in her discussion regarding step three of the disability analysis:

> [t]he limitations identified in the . . . criteria [for listings 12.04 and 12.06] are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in . . . the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the . . . mental function analysis [for listings 12.04 and 12.06].

(Tr. 20). This Magistrate Judge agrees with Plaintiff that the ALJ did not specifically mention Dr. Nahhas's findings that Plaintiff was unable to sleep fully, that he exercises poor judgment,

and that he had marked/extreme difficulties in daily life to find or hold employment.[1] However, as discussed more fully below, the ALJ assigned "little weight" to Dr. Nahhas's opinion, because Dr. Nahhas found that Plaintiff had "[n]o alcohol or S.A. [substance abuse]" (Tr. 355) – a finding clearly contradicted by the record and even Dr. Nahhas's prior treatment notes. (Tr. 303). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *See Kornecky*, 167 Fed. Appx. at 508. And, the ALJ did provide a thorough discussion of Plaintiff's activities of daily living as well as his ability to concentrate and function socially:

> At the hearing, [Plaintiff] testified that he cannot work because of problems with concentration and the need to have instructions repeated. [H]e stated that he was doing well in outpatient treatment but was discharged because he could not get along with others and became involved in a verbal fight. He said he spends a typical day watching television and taking naps throughout the day.
>
> . . .
>
> In February 2009, [Plaintiff] presented for evaluation of cognitive and behavioral changes. The report showed that [Plaintiff] was abusing several substances, including Xanax and prescription narcotics medications, which he was buying "off the streets." [Plaintiff's] family reported that [Plaintiff's] daily functioning had been affected since he began taking these drugs. [Plaintiff] was unable to complete tasks and had difficulty concentrating. He exhibited poor judgment and had problems with memory.
>
> Treatment notes through 2009 shows that [Plaintiff] continued to have problems with drugs. He complained that he felt dizzy and unable to concentrate.
>
> In December 2009, a psychiatric evaluation by ACCESS showed that [Plaintiff] reported becoming angry easily and losing his temper. He becomes "out of control," yells a lot, and becomes agitated easily.
>
> A consultative psychological examination was conducted at the request of the State agency on March 23, 2010. [H]e . . . was apathetic to completing daily

---

[1] Without citation to the record, Plaintiff also says the ALJ did not mention Oakwood Hospital's finding that Plaintiff needed to be institutionalized due to his lack of concentration. This Magistrate Judge finds Plaintiff mis-characterizes the record. The treatment records from Oakwood Hospital do not indicate a need for Plaintiff do be institutionalized. (Tr. 239-259). A note from Oakwood Hospital says "Pt. spoke [with] Tammy at Gateway to provide clinical for inpatient psychiatric evaluation and admission." (Tr. 254). However, this is related to Plaintiff's depression, not his lack of concentration.

> activities, relying on family members to complete tasks for him, such as managing money, driving, and keeping appointments. [O]n examination, [Plaintiff] demonstrated low cognitive ability with some slight capacity for concentration as evidenced by calculation abilities and also slight strengths in immediate memory with difficulties in short-term memory.

(Tr. 21-22). After review of the record, the ALJ found:

> [Plaintiff's] testimony is less than fully credible because it is not supported by the medical record. The record showed some problems with daily activities, social functioning, and concentration but [Plaintiff's] symptoms were not work-preclusive. Psychological and psychiatric evaluations consistently showed GAF scores ranging from 45-50. While these GAF scores indicated symptoms of a "serious" nature, the U.S. Court of Appeals for the Sixth Circuit has indicated that a GAF of 45-50 is consistent with the ability to work (*Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).
>
> [Plaintiff's] testimony is further compromised because of [Plaintiff's] failure to comply with prescribed treatment. When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will seek examination and treatment. [H]ere, the record showed that [Plaintiff] did not take his medication as prescribed and failed to attend treatment several times. Further, the record showed that [Plaintiff] continued to abuse drugs despite advised not to do so as part of his treatment. The record also shows the drugs diagnosed as contributing to his symptoms. [Plaintiff's] failure to comply with recommended treatment for the alleged conditions reflects poorly on his credibility and the assertions that his condition was disabling.
>
> . . .
>
> While [Plaintiff] has some functional limitations, these restrictions are accounted for in the above [RFC] and do not preclude [Plaintiff] from performing a modified range of unskilled, medium work. The undersigned finds that [Plaintiff] is still able to complete daily activities despite his drug use.

(Tr. 23-24).

It is well established that Plaintiff must show that he satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *see also Perschka v. Commissioner*, 411 Fed. App'x 781, 787 (6th Cir. 2010). The listing must be read as a whole and Plaintiff had the burden of demonstrating that he met all parts of the listing. "If all the requirements of the listing are not present, [Plaintiff] does not satisfy that

listing." *Berry v. Commissioner*, 34 Fed. App'x 202, 203 (6th Cir. 2002). "It is insufficient that [Plaintiff] comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

This Magistrate Judge finds that substantial evidence supports the ALJ's decision that Plaintiff did not meet his burden to prove he met all parts of listing 12.04 or 12.06, because Plaintiff's restrictions were less than marked in activities of daily living; social functioning; and maintaining concentration, persistence, or pace.

### 2. The ALJ Did Not Err in her Assessment of Plaintiff's Treating Physician's Opinion (Dr. Nahhas)

Plaintiff next argues that the ALJ erred by failing to explain why the records of Dr. Nahhas did not support Plaintiff's testimony. (Dkt. No. 9 at 6). This Magistrate Judge finds that the ALJ appropriately gave "little weight" to Dr. Nahhas's opinion.

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p. Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 544 ("[t]he regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination") (citation omitted).

On the other hand, the issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 CFR § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Gaskin v. Comm'r of Soc. Sec.*, 280 F.Appx. 472, 474 (6th Cir. 2008). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F.Appx. 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

The ALJ stated the following regarding Dr. Nahhas's opinion:

> The treating source opinion is not supported by any clinical findings or assessments by any other evaluating medically acceptable source. Additionally, the treating source opinion indicates that [Plaintiff's] impairments do not include alcohol and/or drug abuse, which is not accurate. Such an inaccuracy on an issue as important as substance abuse in [Plaintiff's] case questions the validity and accuracy of the remainder of the opinion and reflects poorly on the credibility of the treating source opinion as a whole. Accordingly, it is given little weight and greater weight is given to the findings of the consultative examiner.

(Tr. 24). With regard to the substance abuse issue, Plaintiff's brother testified that Plaintiff had a history of prescription drug abuse, including multiple residential detoxification treatments (Tr. 43-47); Plaintiff has a history of pill abuse (Tr. 311); Plaintiff left a doctor's office because he did not receive any medication (Tr. 308); and a doctor's note indicates that Plaintiff has a drug addiction (Tr. 314). It was appropriate for the ALJ to use consistency as a factor in determining how much weight to give Dr. Nahhas's opinion. *See* 20 CFR § 404.1527(d)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we give to that opinion").

This Magistrate Judge finds the ALJ's opinion was sufficiently specific to make clear to any subsequent reviewer that she gave Dr. Nahhas's opinion little weight, and the ALJ provided "good reasons" for the weight she gave the treating source's opinion.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment should be **DENIED**, Defendant's motion for summary judgment should be **GRANTED**, and that the findings of the Commissioner should be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
Mark A. Randon<br>
United States Magistrate Judge

Dated: September 24, 2012

### Certificate of Service

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 24, 2012, by electronic and/or ordinary mail.*

<i>s/Melody Miles</i><br>
<i>Case Manager</i>